HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ENTERPRISES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PASABAN, S.A.; SERGIO PASABAN and JANE DOE PASABAN I; ALFREDO PASABAN and JANE DOE PASABAN II; CRISTINA PASABAN and JOHN DOE PASABAN, <br><br> Defendants. | CASE NO. 3:11-cv-05919-RBL <br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS <br><br> [Dkt. # 18-27, 30, 31] |

THIS MATTER is before the Court on Defendants' Motion to Dismiss for lack of personal jurisdiction, forum non conveniens, and failing to comply with the filing requirements for a derivative action [Dkt. #18]. The case arises out of a breach of contract and shareholders derivative action on behalf of L.P., Inc. (which is actually incorporated as "L.P."), initiated by Plaintiff Enterprises against Defendants for infringing on L.P.'s exclusive right to sell and market equipment in certain countries. For the reasons that follow, the motion is DENIED and Plaintiff's request for leave to amend is GRANTED.

## I. FACTUAL SUMMARY

The story here is a convoluted one that requires a venture back in time. In 1903, Frank Lamb and George Emerson founded Lamb Grays Harbor. Lamb Grays Harbor was a logging business that evolved into a pulp and paper material handling equipment producer in Grays Harbor, Washington. Enterprises International, Inc. is a Washington holding company with its principal place of business in Hoquiam, Washington. It traces its lineage to a group of companies founded by the Lamb family in Grays Harbor County. "Enterprises" refers to Enterprises, its predecessor companies, including Lamb Grays Harbor and Haines & Emerson, Inc.,[1] and its subsidiaries. David E. Lamb is the current President and CEO of Enterprises.

While the Lamb family was building its pulp and paper company, Pedro Pasaban,[2] a Spanish citizen, was busy starting Talleres Pasaban in Tolosa, Spain (founded 1928). Talleres Pasaban is the predecessor to Pasaban, S.A., the Defendant here.[3] Pasaban began as a paper mill machinery repair shop, eventually evolving into a manufacturer of paper and board machinery including cutters, reelers, printers, and bag manufacturing machines. Pasaban is best known for its manufacturing of sheeters, winders, and other products used to manufacture and prepare paper. A sheeter takes one or more rolls of paper and cuts it into sheets of paper. A winder unrolls rolls of paper and cuts the roll into smaller ones.

---

[1] Haines & Emerson is the named company on the contracts at issue in this matter. On November 1, 1999, Pasaban Americana, Pasaban, L.P., Haines, and Enterprises all consented by written amendment, agreeing that wherever Haines was named in the Pasaban License, Shareholders Agreement, and L.P. License, Enterprises would appear instead. And, Enterprises explicitly accepted all rights and obligations of Haines, which also transferred ownership of its L.P. shares to Enterprises.

[2] To avoid confusion, the Court will refer to the individual members of the Pasaban family by their first name. The Court intends no disrespect.

[3] For clarity, the Court will refer to Talleres Pasaban, Pasaban, S.A., and its other predecessors as "Pasaban."

In the 1980s, Pasaban began selling its sheeters and winders outside of Spain. The sheeters and winders were compatible with and complementary to other paper processing equipment manufactured by Enterprises. At that time, Isaac Pasaban led the Pasaban company. Isaac is the father of the individual defendants in this case, Sergio, Cristina, and Alfredo. Luis Ara was the "director of coordination" for the Pasaban family. Decl. of David E. Lamb at 2 [Dkt. #31]. Julian Echeverria was the sales director of Pasaban.

Pasaban and Enterprises began what would be a thirty-year relationship. David Lamb traveled to Europe to inspect the Pasaban equipment, intending to make Enterprises the marketing and sales agent for Pasaban in the United States. Following David Lamb's visit, Isaac Pasaban sent a letter to Enterprises expressing interest in visiting Hoquiam and Tacoma, as well as a desire to enter into "lines of collaboration for the progress of our discussed projects." *Id.* at Ex. 2 (letter of April 23, 1986). In 1987, Enterprises and Pasaban executed an Agency Agreement, which operated for three or four years (it appears unclear). Under the agreement, Enterprises acted as Pasaban's exclusive agent in North America and the Pacific Rim under the name "Lamb Pasaban." Pasaban and the individual defendants, through Enterprises, sold multi-million dollar projects in Michigan, Virginia, and Quebec, totaling approximately $13,000,000 in sales.

During those years, Pasaban and Enterprises began discussing converting the agency relationship into a joint venture with a jointly owned corporation serving as the vehicle. Ara and Echeverria, Pasaban's agents, visited Tacoma and Hoquiam approximately four or five times, Sergio and Isaac Pasaban visited Washington, and David Lamb traveled to Europe. Most of the negotiations were between Lamb, Ara, and Echeverria because of language barriers. Lamb did

not doubt that Ara and Echeverria were negotiating on behalf of Pasaban's board, which was comprised of Isaac, Sergio, Cristina, and Alfredo.

In 1989, Enterprises and Pasaban decided to join together and market sheeters and winders internationally, creating a wholly-owned American subsidiary, Pasaban Americana, Inc. Importantly, Pasaban Americana is a Washington corporation. The individual defendants have served as both directors and officers of Pasaban Americana since its inception and continued to hold those positions until Enterprises filed the Complaint. Pasaban owns Pasaban Americana outright.

On January 29, 1990, Pasaban and Pasaban Americana entered into a License Agreement ("Pasaban License"), under which Pasaban granted certain rights to Pasaban Americana, including rights to manufacture, market, and service products such as winders and sheeters in certain countries. The agreement adopts Washington law and provides that Pasaban consents to jurisdiction and venue in the state or federal courts of Pierce County.

On March 31, 1990, Pasaban entered into an Estoppel Agreement with Enterprises, which secured the rights transferred in the Pasaban License for the benefit of Enterprises. In that one-page agreement, Pasaban agreed not to modify the Pasaban License without Enterprises' consent. The Estoppel Agreement does not contain a jurisdiction or venue provision.

On July 6, 1990, Enterprises and Pasaban Americana formed L.P., Inc., a Washington corporation, alloting 51% ownership to Enterprises and 49% to Pasaban Americana. The two companies, Pasaban Americana and Enterprises, simultaneously entered into a Shareholders Agreement and a License Agreement ("L.P. License") with L.P. Under the L.P. License, Pasaban Americana granted to L.P. all the rights and privileges Pasaban Americana had obtained from its parent—Pasaban, S.A. The L.P. License and the Shareholders Agreement provide that

"[a]ny dispute arising between any of the parties hereto and concerning this Agreement shall be arbitrated at Tacoma, Washington, or such other city as is mutually agreed upon by the parties, in accordance with the UNCITRAL Rules of Arbitration." Decl. of Gustavo Lascurain, Ex. C at 9 [Dkt. #22]. The agreements also state that Washington law governs, and the parties consent to jurisdiction and venue in the state or federal courts in Pierce County.

L.P.'s original board of directors consisted of Ara, Sergio, Echeverria, David Lamb, Frank Lamb, and William Mehaffey. Tacoma attorney, Carol MacKinnon, incorporated L.P. and served as its registered agent and counsel. Isaac and Sergio executed the Shareholders Agreement on behalf of Pasaban Americana.

L.P.'s principal place of business is in Mobile, Alabama, where its general manager, Tom Ebel, resides. David Lamb is L.P.'s current vice president and director.

On November 9, 2011, Enterprises brought suit against Pasaban and the three individual defendants and their spouses in this Court. Enterprises sued on its own behalf and derivatively on behalf of L.P. Enterprises alleges that, since the license agreements were executed, Pasaban has been extensively marketing the subject equipment[4] within L.P.'s exclusive territory—violating L.P.'s exclusive distribution rights. Thus, Pasaban has allegedly restricted L.P.'s business primarily to servicing existing equipment and providing spare parts in North America. Upon discovery of Pasaban's activities in January 2011, Enterprises notified Pasaban's manager, who expressed ignorance of the existence of the agreements between Pasaban, Pasaban

---

[4] The agreements provide that "subject equipment" means "(i) sheeting and winding equipment and associated spare parts manufactured by [Pasaban], but excluding pulp cutters and (ii) such other equipment and associated spare parts as [Pasaban] may wish to sell in the Territory." Decl. of Gustavo Lascurain, Ex. A at 1. The agreements define the "Territory" as "North America, Brazil, Asia (except USSR, India, Pakistan, Ceylon, Sri Lanka, and the Middle East), New Zealand and Australia." *Id.*

Americana, L.P., and Enterprises. On July 25, 2011, Sergio sent a letter to Enterprises attempting to terminate or otherwise modify the Pasaban License, allegedly in direct contravention of the Estoppel Agreement. Pasaban and Pasaban Americana denied that they had breached the Estoppel Agreement.

Enterprises has not attempted any demand on L.P.'s board and asserts that demand would be futile, as the board is equally split between Enterprises- and Pasaban-controlled directors.

In sum, Enterprises alleges breach of the L.P. License, breach of the Estoppel Agreement, and unfair competition. Enterprises requests an accounting, specific performance, injunctive and declaratory relief, actual damages, treble damages, reasonable attorney's fees, experts' fees, costs and expenses. On April 2, 2012, Defendants answered, asserting lack of personal jurisdiction and forum non conveniens. Three days later, Defendants moved to dismiss for lack of personal jurisdiction, forum non conveniens, and improper filing under Federal Rule of Civil Procedure 23.1.

## II. DISCUSSION

As an initial matter, Enterprises' request for an extension of time is moot. The requested deadline of May 25, 2012, has passed and Enterprises has already filed its completed response to Defendants' Motion to Dismiss. Therefore, the Court will address only the substantive arguments on the Motion to Dismiss.

**A. Forfeiture of Challenge to Personal Jurisdiction**

Enterprises argues that the motion to dismiss should be denied because Defendants filed it after their answer, rendering it untimely. Defendants argue that judicial economy favors consolidating motions, as they have done here, and considering Defendants' Motion to Dismiss for lack of personal jurisdiction would not prejudice Enterprises.

A defendant abandons a personal jurisdiction defense when he or she fails to raise the issue in either a responsive pleading or a Rule 12 motion. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006). Personal jurisdiction may also be forfeited—even if a defendant has nominally preserved the defense by reciting it in an answer—if that defendant substantially participates in the litigation without actively pursuing its Rule 12(b)(2) defense. *See Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1309 (Fed. Cir. 2005). To determine whether a party has forfeited personal jurisdiction by conduct, courts look to the length of time that elapses between service of process and a defendant's pursuit of a personal jurisdiction defense with a Rule 12(b)(2) motion. The longer the time interval, the more likely it is that courts will find a waiver. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2nd Cir. 1999) (holding defendant forfeited personal jurisdiction defense by failing to raise it for four years after inclusion of defense in answer). Courts also look to the extent of the objecting defendant's involvement in the action. *See id.* (waiver where defendant had participated in extensive pretrial proceedings before filing motion to dismiss); *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (waiver where defendant participated in discovery, filed motions, participated in five-day trial, and filed post-trial motions, all before seeking ruling on personal jurisdiction defense).

Defendants filed their Motion to Dismiss three days after filing their Answer, which asserted lack of personal jurisdiction. Three days is insignificant, especially when compared to those cases where defendants waited months or years to file a motion to dismiss. Further, Defendants have not substantially participated in the litigation. The only other pleading filed by Defendants was a response to Enterprises' Motion for Order Confirming Service Nunc Pro Tunc. Defs.' Resp. to Mot. for Order Confirming Serv. [Dkt. #13]. Accordingly, the Defendants'

Motion to Dismiss for lack of personal jurisdiction was properly filed after the Answer and this Court will address it on the merits.

**B. Personal Jurisdiction**

Defendants argue that this Court does not have personal jurisdiction over them because Pasaban is a Spanish corporation, and the individual defendants are Spanish citizens who have visited Washington once or twice each, about twenty years ago. They also argue that Pasaban does not have any offices, shops, plants, or other formal presence in the United States. They contend that merely entering into a contract with a Washington entity is not enough to establish jurisdiction.

Enterprises argues that the Court may exercise personal jurisdiction because of the 25-year history of Defendants' contacts with this jurisdiction, which include (but are not limited to) the individuals' visits to Washington in the 1980s and 1990s to negotiate and execute contracts, attendance at board meetings, Pasaban's three-year agency relationship formed in this jurisdiction with a Washington corporation, Pasaban's creation of a wholly-owned subsidiary incorporated in Washington, the individuals' roles on the boards of directors and as officers of two Washington corporations for twenty years, and Defendants' receipt of significant compensation from Washington corporations.

In the context of a challenge to the Court's jurisdiction, a plaintiff's factual allegations are construed in the light most favorable to him. Plaintiff is required only to make a prima facie showing of personal jurisdiction. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1082, 1087 (Fed. Cir. 2003).

Washington's long-arm statute (RCW 4.28.185) represents legislative intent to assert personal jurisdiction over a foreign entity to the full extent permitted by due process. *Byron*

*Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465 (1999). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In Washington, courts use three criteria to determine specific jurisdiction: (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Perry v. Hamilton*, 51 Wn. App. 936, 939 (1988); *see also Freestone Capital Partners, L.P. v. MKA Real Estate Opportunity Fund*, 155 Wash. App. 643, 652–53 (2010) (quoting *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763, 767 (1989)).

Pasaban Americana , as a Washington corporation, is clearly subject to Washington law. The only question is whether Pasaban S.A., a Spanish entity, and the individual Defendants, are subject to Washington jurisdiction as the sole owners of Pasaban Americana. Where the corporate vehicle is employed as a device by which to conduct "continuous and systematic" activities in a state without subjecting the out-of-state corporation to the general jurisdiction of the forum, it may be just and equitable to treat two separately incorporated entities as one. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 425 (9th Cir. 1977). Factors to consider in determining alter ego in the jurisdictional context are:

> [W]hether the officers and directors of the two are the same; whether the subsidiary pays cash for products sold or service rendered to it by the parent; whether separate books, bank accounts, tax returns, financial statements and the like are kept; and whether the parent corporation holds the subsidiary out as an agent, either expressly or impliedly as by representing it is doing business in, or has an office in the state, when only the subsidiary is present.

*Id.* at 426.

Enterprises' exhibits indicate that Pasaban Americana was an empty shell through which Pasaban could freely conduct its business in the United States without threat of suit. Many of the exhibits refer to Pasaban the parent and not the subsidiary. L.P.'s income tax returns even identify Pasaban, S.A., as the "ultimate indirect 25% foreign shareholder," rather than Pasaban Americana (as the Shareholders Agreement and L.P. License state). Decl. of David E. Lamb, Exs. 29–30. Further, the officers and directors of Pasaban Americana and Pasaban, S.A., are the same: Sergio, Alfredo, and Cristina. Pasaban also held Pasaban Americana out as its agent, specifically in the Pasaban License, L.P. License, and Shareholders Agreement. Perhaps most obviously, the very name—Pasaban Americana—indicates that the company is merely Pasaban, S.A.'s arm in the United States. Accordingly, the evidence, when viewed in the light most favorable to Enterprises, demonstrates that Pasaban Americana is merely an alter ego of Pasaban, S.A. Thus, Enterprises makes a prima facie showing that this Court has personal jurisdiction over Pasaban, S.A.

As to the individual defendants, courts assess each defendant's contacts with the forum state individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Defendants' conduct and connections with the forum state must be such that the defendants "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in

that forum. *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981); *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978). However, the individual defendants' status as corporate officers "does not somehow isolate them from jurisdiction." *Calder*, 465 U.S. at 790. Courts can exercise personal jurisdiction over a corporate officer where a plaintiff demonstrates that a corporate officer is personally liable for wrongdoing in the forum or if the corporation is the alter ego of the individual officer. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520–21 (9th Cir. 1989). A corporate officer's contact on behalf of a corporation is sufficient to subject the officer to personal jurisdiction where the officer "is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities." *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (internal quotations omitted). Here, the Court must conclude that Enterprises makes a prima facie showing supporting the exercise of jurisdiction over the individual Defendants.

First, and most importantly, Sergio, Alfredo, and Cristina actively participated in the day-to-day operations of L.P.—a Washington entity. Enterprises' exhibits show that any transaction entered into on behalf of L.P. or Pasaban was subject to approval by Sergio, Alfredo, and Cristina. Alfredo also supervised Pasaban and L.P.'s projects throughout the world in person. Sergio, Alfredo, and Cristina were not passive officers or directors in the operations of L.P. and Pasaban. They attended all board meetings for L.P. and Cristina was a signatory on L.P.'s United States bank account. Enterprises has made a prima facie showing that Sergio, Alfredo, and Cristina, in their roles as officers and directors of Pasaban, had control of or direct participation in the alleged sales and marketing of the subject equipment in L.P.'s exclusive territory.

Second, Enterprises alleges Sergio, Alfredo, and Cristina acted as officers and directors of L.P. and Pasaban when they violated the contracts that they negotiated on behalf of L.P., Pasaban Americana, and Pasaban. Enterprises alleges that Sergio attempted to terminate or otherwise modify the Pasaban License in direct contravention to the Estoppel Agreement. This alleged breach is central to this action. Sergio also signed the L.P. contracts on Pasaban's behalf.

In response, Sergio, Alfredo, and Cristina argue that the exercise of jurisdiction would be unreasonable. However, they have argued only that they are Spanish citizens and have not been to Washington more than three or four times. They also argue that the Court should look to L.P. and Pasaban Americana's principal places of business, which are not in Washington. It should come as no surprise to the individual defendants that they are being haled into this Court because of their thirty-year relationship with Enterprises and David Lamb, their positions as officers and directors of two Washington corporations, and their various business transactions involving Washington. Two of the major contracts signed on behalf of Pasaban and its subsidiary provide for jurisdiction in this forum. They even created Pasaban Americana as a Washington corporation with the expectation that that company would be Pasaban's buffer for lawsuits in this country. After spending twenty years operating Washington corporations and doing business out of Washington, it is reasonable to hale them into court here for breaching obligations to those Washington corporations. Accordingly, the individual Defendants have not sufficiently shown that this Court's exercise of personal jurisdiction would be unreasonable.

**C. Forum Non Conveniens**

Defendants argue that this Court is an inconvenient forum, and this suit should be brought in Spain or China. The argument for Spain is obvious (Pasaban's place of incorporation

and the residence of the individual Defendants); the sole basis for asserting jurisdiction in China is that the country was part of L.P.'s exclusive territory.

Enterprises argues that Spain is an improper forum because this case involves claims by a Washington corporation, derivative claims on behalf of another Washington corporation, claims under Washington statutes, and conduct that was directed outside of Spain and caused harm in Washington. China is also not a proper forum and would be more inconvenient than Washington because none of the parties reside there or maintain sources of proof there, this case does not involve a controversy localized in China, and it does not arise under Chinese law.

Forum non conveniens enables a court to decline to exercise jurisdiction if "the litigation can be more appropriately conducted in a foreign tribunal." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). A party moving to dismiss under forum non conveniens must show the existence of an alternative forum, the threshold requirement for dismissal, and that the balance of private and public interests favors dismissal. *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 766 (9th Cir. 1991). Courts consider five factors in exercising discretion to dismiss for forum non conveniens:

> (a) The existence of an alternative forum;
> (b) The convenience or potential prejudice to the litigants if transferred to another forum;
> (c) The public interest at stake including a limitation on the use of a local forum for resolution of controversies which lack significant local contacts and may require the untangling of conflict of law questions and the possible application of foreign law;
> (d) Trial practicalities including the access to sources of proof, the availability of compulsory process, the cost of obtaining willing witnesses, the possibility of either a court or a jury viewing the scene if it is a case in which a viewing would be appropriate and the enforceability of a judgment should one be obtained; and
> (e) Consideration of any other factors which would bear on the interests of the original and alternative forums in the subject matter of the suit or on the possibility in either forum of a fair, expeditious and inexpensive trial.

*Gulf Oil Corp.*, 330 U.S. at 508–09.

Defendants argue that most of the discovery process will occur in Spain, that Pasaban is incorporated in Spain, and that the individual defendants are Spanish citizens. However, the contracts at issue provide that Washington law governs. Defendants incorporated Pasaban Americana and L.P. in Washington and they contracted with Enterprises, a Washington corporation. Most sources of proof are in Washington, the individuals are subject to personal jurisdiction here, and most of the harm alleged occurred here. Defendants' arguments do not sufficiently support the conclusion that Spain is an appropriate alternative forum.

Moreover, Defendants have not demonstrated why China would be a superior forum. Although they argue that China is the location of the alleged breach, the pleadings suggest otherwise.

Defendants are also attempting to create a conflict of laws where no conflict exists: the L.P. License provides specifically that Washington law governs, and the Estoppel Agreement refers to the Pasaban License, which also provides for Washington law. Further, Enterprises has sued Defendants under Washington's unfair competition statute. Enterprises, L.P., and Pasaban Americana are also Washington corporations, subject to Washington law. This Court will not need to interpret Spanish or Chinese laws in this case. In sum, Defendants have not met the threshold requirements for dismissal on forum non conveniens grounds.

**D. Federal Rule of Civil Procedure 23.1**

Defendants argue that Enterprises did not comply with Rule 23.1 because it failed to allege in the Complaint that this action is "not a collusive one to confer jurisdiction that the court would otherwise lack." Defs.' Mot. to Dismiss at 19.

Diversity jurisdiction is collusively manufactured when a party who wishes to sue, but would be unable to bring a diversity action, recruits someone living in another jurisdiction to

become a shareholder for the purpose of initiating a derivative suit with diversity jurisdiction. *Walden v. Elrod*, 72 F.R.D. 5, 13 (W.D. Okla. 1976) (citing *Amar v. Garnier Enters., Inc.*, 41 F.R.D. 211 (C.D. Cal. 1966)).

Enterprises and its predecessors have been Washington corporations since 1903. L.P. has been a Washington corporation since its creation, and Enterprises has been the majority shareholder of L.P. since. Defendants have provided no plausible basis for its allegation that Enterprises has brought a collusive derivative action and attempted to create diversity jurisdiction where it did not exist before. However, the Court **GRANTS** Enterprises leave to amend its Complaint to add that this is not a collusive action to confer jurisdiction pursuant to Rule 23.1.

### III. CONCLUSION

Defendants' Motion to Dismiss is **DENIED**. Enterprises' request for leave to amend (to add statement of non-collusion) is **GRANTED**.

IT IS SO ORDERED.

Dated this 3rd day of July, 2012.

/s/ Ronald B. Leighton
Ronald B. Leighton
United States District Judge